**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CIVIL CASE NO. 1:09cv163**

| | |
|---|---|
| **SANDVIK INTELLECTUAL PROPERTY AB,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )    <u>**ORDER**</u> |
| | ) |
| **KENNAMETAL, INC.,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**THIS MATTER** is before the Court on the Defendants' Motion to Transfer Venue [Doc. 24].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, United States Magistrate Judge Dennis L. Howell was designated to consider this Motion and to submit recommendations for its disposition. On November 5, 2009, the Magistrate Judge filed a Memorandum and Recommendation in which he recommended granting the motion to transfer venue to the United States District Court for the Western District of Pennsylvania. [Doc. 35]. The Plaintiff filed timely objections to that recommendation. [Doc. 36].

1

# PROCEDURAL HISTORY

The Plaintiff Sandvik Intellectual Property AB (Sandvik) initiated this action for patent infringement on April 27, 2009. [Doc. 1]. In the Complaint, the Plaintiff acknowledges it is a Swedish corporation having its principal place of business in Sweden. [Id., at 1]. Kennametal Inc. (Kennametal) is alleged to be a Pennsylvania corporation with its principal place of business in Latrobe, Pennsylvania. [Id.]. At issue are two patents assigned to the Plaintiff for a method of coating and a coated cutting tool. [Id., at 2]. Kennametal is alleged to have sold products which infringe the patents. [Id.].

Kennametal promptly moved to dismiss, arguing that the Complaint failed to identify the allegedly infringing products or to explain in what manner they infringe. [Doc. 15]. Sandvik both responded to the motion and filed an Amended Complaint in which it cured the defects of which Kennametal had complained.[1] [Doc. 19; Doc. 20]. As a result, the Magistrate Judge denied the motion to dismiss as moot. [Doc. 21]. Approximately one month later, Kennametal filed this motion to transfer venue.

---

[1]Because Kennametal had not yet filed an answer, the Plaintiff could amend its complaint without leave. Galustian v. Peter, __ F.3d __, 2010 WL 155456 (4th Cir. 2010) (because a motion to dismiss is not a responsive pleading, plaintiff may amend the complaint as a matter of course without leave pursuant to Fed.R.Civ.P. 15).

## STANDARD OF REVIEW

The first issue for resolution is the standard of review applied to the Magistrate Judge's recommended disposition of the motion to transfer venue. Although the Plaintiff states that a motion to transfer venue is nondispositive, it nonetheless claims that the district court must conduct a *de novo* review and may receive additional evidence. [Doc. 36, at 1-2]. Indeed, as noted below, the Plaintiff has submitted with the objections evidence which it did not present to the Magistrate Judge.

For the purposes of this motion, the Magistrate Judge was instructed by the District Court to consider a motion to transfer venue as a dispositive motion and to prepare a memorandum and recommendation as to disposition. Thus, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §636(b)(1)(C). The district judge may accept, reject, or modify the findings or recommendations and may, but is not required to, receive further evidence.[2] Id.

A party objecting to a Magistrate Judge's Memorandum and

_____

[2]In this Division, the Court does not encourage the submission of evidence to the District Court which was not presented to the Magistrate Judge. Such a practice seriously erodes judicial efficiency.

Recommendation "must specifically identify the portions of the [Memorandum] and Recommendation to which objections are made and the basis for such objections." Thomas v. Westinghouse Savannah River Co., 21 F.Supp.2d 551, 560 (D.S.C. 1997), *affirmed in part, dismissed in part on other grounds* 162 F.3d 1155 (4th Cir. 1998). "Frivolous, conclusive or general objections need not be considered by the district court." Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir.1987), *overruled on other grounds* Douglass v. United Ervs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996).

> A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An "objection" that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in this context.

Suntrust Mortgage, Inc. v. Busby, 651 F.Supp.2d 472, 476 (W.D.N.C. 2009), *quoting* Aldrich v. Bock, 327 F.Supp.2d 743, 747 (E.D.Mich. 2004).

To the extent that a party asserts claims in the objections which were not asserted in support of or in opposition to the motion, *de novo* review is not warranted. Price v. Dixon, 961 F.Supp. 894 (E.D.N.C. 1997)(claims cannot be raised for the first time in objections to a memorandum and recommendation); Wells v. Shriners Hospital, 109 F.3d 198, 200 (4th Cir.

1997)(boilerplate objections will not avoid the consequences of failing to object altogether). This Court therefore does not conduct a *de novo* review of those portions of the Memorandum and Recommendation to which non-specific objections have been filed. Nor will it conduct a *de novo* review of issues which were not raised before the Magistrate Judge.

Section §1404(a) of Title 28 of the United States Code provides that a district court may transfer any civil action "to any other district ... where it might have been brought" "[f]or the convenience of parties and witnesses, in the interest of justice[.]" Here, the parties have conceded that the action could have been brought in the Western District of Pennsylvania.[3] [Doc. 20, at 1; Doc. 25, at 4 n.4; Doc. 28, at 1-2; Doc. 36, at 2-3]. In determining whether a motion to transfer pursuant to 28 U.S.C. §1404(a) should be granted in a patent case, the Court applies the law of the appropriate regional circuit, which in this case is the Fourth Circuit.[4] Storage Technology Corp. v. Cisco Systems, Inc., 329 F.3d 823, 836 (Fed. Cir. 2003); Netalog, Inc. v. Tekkeon,

---

[3]See, 28 U.S.C. §1400 ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides[.]"). The parties also concede that Kennametal's headquarters are in Latrobe, Pennsylvania which is in the Western District of Pennsylvania; thus, the Defendant resides there. See, 28 U.S.C. §1391(c).

[4]The law of the Circuit obviously includes the rulings of the various district courts located within the Fourth Circuit. Thus, to the extent the Plaintiff claims the Magistrate Judge may not cite case law from district courts in Virginia, that objection is rejected.

Inc., 2007 WL 534551 **5 (M.D.N.C. 2007) (citation omitted).

In the Fourth Circuit, the party seeking transfer carries a heavy burden to establish that transfer is appropriate. Scholl v. Sagan RV Supercenter, LLC, 249 F.R.D. 230, 239 (W.D.N.C. 2008), *citing* Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F.Supp. 93, 95 (W.D.N.C. 1990). There are eleven factors that a court should consider when deciding whether to transfer:

1. The plaintiff's initial choice of forum;
2. The residence of the parties;
3. The relative ease of access of proof;
4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;
5. The possibility of a view;
6. The enforceability of a judgment, if obtained;
7. The relative advantages and obstacles to a fair trial;
8. Other practical problems that make a trial easy, expeditious, and inexpensive;
9. The administrative difficulties of court congestion;
10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and
11. The avoidance of unnecessary problems with conflict laws.

Id.

Because the statute provides no guidance as to the weight given each of the factors listed above, a court's decision "necessarily must turn on the particular facts of each case." Ultimately, "the trial court must consider all relevant factors to determine whether

6

or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

Byerson v. Equifax Information Services, LLC, 467 F.Supp.2d 627, 632 (E.D.Va. 2006), *quoting* 15 Wright, Miller & Cooper, Federal Practice and Procedure, §3847 (2005).

## FACTS RELATED TO MOTION TO TRANSFER

Sandvik is an intellectual property holding company incorporated and having its principal place of business in Sweden. [Doc. 20, at 1, 2]. William Tisdall (Tisdall), who is employed by Sandvik Inc., a company different from the Plaintiff, has testified in his declaration submitted by the Plaintiff that Sandvik, Inc. is a subsidiary of Sandvik AB. [Doc. 28-1, at 2]. Tisdall works in New Jersey, not in North Carolina or Pennsylvania. [28-1]. Although the Plaintiff (Sandvik Intellectual Property, AB) alleges in its brief opposing transfer that it is owned by Sandvik AB, it has not placed anything in the record showing that relationship. [Doc. 28, at 6; Doc. 28-1, at 2].

Sandvik, Inc. has a plant in Westminster, South Carolina where coated cutting inserts are manufactured. [Id.]. In his affidavit, Tisdall stated that "[i]t is [his] understanding that at least some of these coated cutting inserts are covered by the patents in this litigation." [Id.]. Nothing more specific as to the

numbers of products covered by the patents is offered.

U.S. Patent No. 5,487,625 (the '625 Patent) is a product patent pertaining to a cutting tool which is coated with single-phase alpha-alumina having certain dimension and texture characteristics making it suitable for cutting metals at high temperatures. [Doc. 20-2]. U.S. Patent No. 5,654,035 (the '035 Patent) is a method patent pertaining to the method of coating the cutting tool with single-phase alpha-alumina. [Doc. 20-3].

The Plaintiff alleged in its Amended Complaint that the following Kennametal products infringe its patents: KC9110, KC9310, KC9315, KC9320, KC9325, KC5515. [Doc. 20]. Kennametal acknowledges through the affidavit of Mark Greenfield (Greenfield) that it manufactures products KC9110, KC9315, KC9320, KC9325, and TN5515 but states that it does not manufacture KC5515 or KC9310. [Doc. 27, at 1-2]. It is undisputed that part of the process for manufacturing these products includes coating the cutting tools. Greenfield, who is the Director of Global Materials Technology, stated that "over 99% of the products at issue that were manufactured in the United States were coated" at the Kennametal manufacturing facility in Orwell, Ohio. [Id., at 2]. The only other location in the United States at which coating occurs is in Johnson City, Tennessee, which therefore performs less than 1% of the

coating of these products manufactured in the United States. [Id.].
Kennametal has not provided any information about whether the allegedly
infringing products are also manufactured outside of the United States; and,
if so, in what percentage compared to total product output. It is undisputed
that Kennametal has its corporate headquarters in Latrobe, Pennsylvania and
that its research and development, in-house legal department and corporate
officers work there.

The Plaintiff, in its objections, stated that "a majority of the products at
issue were manufactured not in the United States, but overseas." [Doc. 36, at
3]. Attached to the objections are exhibits, purportedly packaging labels,
which were not placed before the Magistrate Judge. [Doc. 36-1, Doc. 36-2].
The Plaintiff asserts that "[o]f the six [allegedly infringing] products identified
in the Amended Complaint, three purchased by [the Plaintiff] for testing were
manufactured in China and one was manufactured in Germany." [Doc. 36, at
4-5]. A review of the packaging labels actually shows that of the four products
purchased, only three of them are identified as allegedly infringing products.
[Doc. 36-1; Doc. 36-2]. A fourth is identified as product KCP05 which is not
a product alleged to infringe the patents. [Doc. 36-1]. Of the three products
which allegedly infringe, none were shipped into the State of North Carolina;

all three were shipped into the State of New Jersey. [Doc. 36-1; Doc. 36-2]. The fact that these particular products were labeled as products of other countries does not show the percentage of all allegedly infringing products manufactured by Kennametal outside of the United States.

In his affidavit opposing transfer, Tisdall stated that in February 2009 he purchased four infringing Kennametal products from a seller located in Belmont, North Carolina. [Doc. 28-1].  A review of the packing slip attached to the affidavit shows that only three such allegedly infringing products were purchased. [Doc. 28-1, at 4].  The fourth Kennametal product is identified as KC9125 which has not been alleged to be an infringing product. [Id.].  Two other products are identified as "Widia AONT10T308 MH TN5515." [Id., at 4-5].  There is nothing to support a finding that these two products were manufactured by Kennametal and sold in North Carolina, particularly in light of their identification as "Widia" products and there being no evidence before the Court that there is any connection between Kennametal and such "Widia" products.

Kennametal submitted in support of its motion an affidavit from Greenfield in which he stated that "Sales [of the allegedly infringing products] to customers located in the Western District of North Carolina accounted for

about 2% of U.S. sales of the products at issue (in dollars) over the last five fiscal years." [Doc. 27, at 2]. Based on this statistic, the Plaintiff argues that North Carolina "is the home of demonstrable infringement activities." [Doc. 28, at 2].

Neither the Plaintiff nor Kennametal has a presence in the Western District of North Carolina beyond a few sales representatives who may reside here and work out of their homes. [Doc. 20, Doc. 25, at 4]. The Plaintiff's corporate headquarters are in Sweden while the Defendant's are in Latrobe, Pennsylvania. Seven of the witnesses identified by Kennametal work in the Latrobe, Pennsylvania headquarters and two others work in the Ohio manufacturing plant. [Doc. 27, at 3]. Two others are former Kennametal employees who live in Greenburg, Pennsylvania. [Id.]. One of these individuals was an intellectual property attorney who was actively involved in correspondence and meetings with the Plaintiff about the patents at issue in this litigation. [Id.]. The other individual managed the coatings technology department. [Id.]. Greenfield stated in his affidavit that the documents relevant to the lawsuit are located in the Latrobe headquarters, including research and development, manufacturing, and sales. [Id.]. Moreover, exemplars of the products at issue as well as the equipment used to

manufacture them are also in Latrobe. [Id.].

The Plaintiff has provided no specific evidence concerning the location of witnesses, documents, exemplars or employees. It argues that the Western District of North Carolina is "conveniently located" between the South Carolina and Tennessee production facilities of the parties. [Doc. 28, at 2]. It has not identified witnesses and/or employees working at its South Carolina plant who are essential to the litigation. Nor has it addressed the existence of exemplars of its products and their location, if any. According to the Plaintiff, the existence of hard copies of documents is irrelevant to venue because all such documents may be retrieved electronically.

## DISCUSSION

**Objections to the Magistrate Judge's Factual Findings.**

The Plaintiff claims the Magistrate Judge erroneously found as fact that 99% of all of the infringing products are manufactured in Ohio and that the sales of infringing products in North Carolina are insignificant. These factual errors, it urges, led to the erroneous conclusion that the Plaintiff's choice of forum is to be given neutral treatment.

According to the Plaintiff, the Magistrate misinterpreted Greenfield's statement about the percentage of products manufactured in Ohio "to mean

that '99 percent of [all of] the allegedly infringing products are manufactured in Ohio.'" [Doc. 36, at 3]. "In actuality, [the Plaintiff claims], a majority of the products at issue were manufactured not in the United States, but overseas." [Id.]. Contrary to the Plaintiff's objection, the Magistrate Judge actually made the following factual finding: "[O]ver 99% of the products at issue *that were manufactured in the United States* were coated at Orwell." [Doc. 35, at 3] (emphasis provided).

The Plaintiff ignores this clause. Instead, Plaintiff cites to later comments by the Magistrate Judge to support its position that he misunderstood Greenfield's affidavit to mean that 99% of all the products are manufactured in the Ohio facility. [Doc. 36, at 5]. Those later comments, however, merely make a shorthand reference to the Magistrate Judge's earlier finding that 99% of the products *manufactured in the United States* are produced in Ohio. [Doc. 35, at 8, 12]. The Court therefore rejects the Plaintiff's argument that the Magistrate Judge erred in this factual finding.

Moreover, as noted above, the Plaintiff's evidence in support of its contention that most of Kennametal's products are manufactured outside of the United States is not persuasive. The Plaintiff claimed that it purchased infringing products manufactured in China and Germany; however, its proof

shows such purchases were limited to three products. This does not show the percentage of all allegedly infringing products manufactured by Kennametal outside of the United States. Additionally, of the three allegedly infringing products purportedly manufactured overseas, none were shipped into the State of North Carolina; all three were shipped into New Jersey. [Doc. 36-1; Doc. 36-2]. See, <u>Koh v. Microtek Intern., Inc.</u>, 250 F.Supp.2d 627, 631-636 (E.D.Va. 2003) (noting in patent case that purported infringer directed its product into the United States through the state to which movant sought transfer, not the state where action was brought, and discounting plaintiff's initial choice of forum based on low sales).

Even if the Plaintiff's statement were supported by the evidence and most of the Kennametal products are manufactured overseas, such would not support venue in North Carolina. "Any civil action for patent infringement may be brought in the judicial district ... where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. §1400(b). The parties concede that neither has a presence in North Carolina beyond the possibility that "a few" sales representatives who work from home may live here. Of the products manufactured in the United States, however, 99% of them are manufactured in Ohio. None of the products are

manufactured in North Carolina. In fact, Kennametal, which is not a North Carolina resident, does not have a "regular and established place of business" in North Carolina even if it is assumed that some acts of infringement occurred here. Ion Beam Applications S.A. v. Titan Corp., 156 F.Supp.2d 552, 563 (E.D.Va. 2000) ("where the plaintiff's choice of forum is a place where neither the plaintiff nor the defendant resides and where few or none of the events giving rise to the cause of action accrued, that plaintiff's choice loses its [ ] status in the court's consideration.").

Venue in this District is also not supported by the less than 1% of the purportedly infringing products that are manufactured in Tennessee. Id. Although the Plaintiff claims the presence of its own manufacturing plant in South Carolina makes North Carolina a convenient forum, Tisdall stated merely that it was his "understanding *that at least some of these coated cutting inserts*" made in South Carolina are covered by the patents. [Doc. 28-1, at 1] (emphasis provided).

> Ultimately, the weight given to plaintiff's choice of venue varies with the significance of the contacts between the venue chosen by plaintiff and the underlying contacts. Thus, if there is little connection between the claims and this judicial district, that would mitigate against a plaintiff's chosen forum and weigh in favor of transfer to a venue with more substantial contacts.

Koh, 250 F.Supp.2d at 635 (citations and quotations omitted). Since the

manufacturing is only *near* this District, but not *in* this District, the Plaintiff is left to argue that venue is proper here only based upon sales of purportedly infringing products.

The Plaintiff, however, also claims the Magistrate Judge erroneously concluded that significant infringing acts did not occur in North Carolina. As noted above, the Plaintiff's evidence is that two months prior to filing this lawsuit, it purchased three allegedly infringing products from a North Carolina distributor. Such a purchase, quite conceivably made in anticipation of litigation, does not show that a substantial portion of infringing conduct referenced during the time period of the amended complaint occurred in North Carolina. Gebr. Brasseler GmbH & Co. KG v. Abrasive Technology, Inc., 2009 WL 874513 **2 (E.D.Va. 2009) ("The mere fact that customers in Virginia may have purchased rotary dental instruments from GBL or Abrasive is an insufficient connection to justify retaining a case arising out of the alleged misuse of a trademark on products distributed by an Ohio company.") (citations omitted); Koh, 250 F.Supp.2d at 635-36. Indeed, as noted by the Magistrate Judge, this purchase was from a distributor located in the Charlotte Division of the Western District of North Carolina, not the Asheville Division.

The Plaintiff nonetheless argues that Greenfield's affidavit shows

significant infringing conduct within North Carolina. This is based on his statement that 2% of the sales in the United States of the infringing products occurred in this District. Reasoning that there are 94 judicial districts in the United States, the Plaintiff argues this shows almost twice as many sales of infringing products occurred in this District than would be expected. The Court finds this conclusion unsupported by statistical data showing industrial density and demand for this particular product within the districts selected by the Plaintiff as the database. "Federal courts are not solicitous of plaintiff's claiming 'substantial weight' for their forum choice where the connection with the forum is limited to sales activity without more." Acterna, L.L.C. v. Adtech, Inc., 129 F.Supp.2d 936, 938-39 (E.D.Va. 2001).

As to these two objections, the Court does not find that the Magistrate Judge made erroneous factual findings or that his legal conclusions based thereon are wrong. This Court concurs in the Magistrate Judge's conclusion that the Plaintiff's initial choice of forum is neutral in deciding whether to transfer venue whereas the residence of the parties weighs in favor of transfer.

The Plaintiff next argues that when considering the relative ease of access of proof as well as the cost of attendance of witnesses, the Magistrate

Judge erroneously concluded it would be easier for witnesses to travel from Sweden to Pittsburgh, Pennsylvania than to Asheville, North Carolina because the former is an international airport. In support of this, the Plaintiff claims there is not a direct flight from Sweden to either airport. The Magistrate Judge, however, made no conclusions about this point, but noted that connections are more easily made from an international airport (such as Pittsburgh) to a foreign destination, than from an airport that is not an international airport (such as Asheville). [Doc. 35, at 9]. Plaintiff does not contest this point.

The Plaintiff also cites evidence submitted by Kennametal showing that the cost of a flight from Sweden to Pittsburgh is only slightly less than a flight from Sweden to Asheville. [Doc. 26-4; Doc. 26-5]. Thus, it claims, there is no proof that litigation of the action here would be more expensive and burdensome for both sides. To the contrary, the Plaintiff claims that if the case remains in Asheville, the Plaintiff's employees who must fly from Sweden would be able "to engage in their regular work at the nearby South Carolina facility or elsewhere in the United States." [Doc. 36, at 6].

The Plaintiff has not identified witnesses and employees who would be required to travel from Sweden and has not disclosed the nature of their

"regular work" which could be performed at the South Carolina manufacturing plant. "The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." Koh, 250 F.Supp.2d at 636. Moreover, the Plaintiff stated that these employees could work "elsewhere in the United States," a factor which does not weigh in favor of a venue close to South Carolina.

> Witness convenience is often dispositive in transfer decisions. But the influence of this factor cannot be assessed in the absence of reliable information identifying the witnesses involved and specifically describing their testimony. This type of particularized information ... is necessary to enable the court to ascertain how much weight to give a claim of inconvenience. Inconvenience to a witness whose testimony is cumulative is not entitled to great weight. By contrast, greater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue.

Board of Trustees, Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc., 702 F.Supp.1253, 1258 (E.D.Va. 1988).

Like most of the Plaintiff's objections, these two are based on speculation and conjecture. The Court rejects the objections and agrees with the Magistrate Judge that the relative ease of access of proof and the costs of obtaining the attendance of witnesses weigh in favor of transfer.

**Objections to the Magistrate Judge's Weighing of the Controlling Factors.**

Although most of these assignments of error have been addressed above, the Court will briefly address the objections. It is noted, however, that the Plaintiff's objections amount to little more than disagreement with the Magistrate Judge's recommendations and reiterate arguments already made.

First, the Plaintiff claims the Magistrate Judge erred in concluding the Plaintiff's choice of forum was neutral. To the extent this objection is based on the Plaintiff's claim of factual error, it has been addressed and rejected.

The Plaintiff claims that its selection of venue was "significantly influenced" by its proximity to the South Carolina and Tennessee manufacturing plants[5] and the subpoena power this Court has over the employees at those plants. However, "the witnesses will be predominantly employees of the companies, thus compulsory process appears not to be an issue." Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F.Supp.2d 357, 363 n.2 (W.D.N.C. 2003). Moreover, as noted above, the Plaintiff has not identified

---

[5]The Court has already concluded that such proximity does not weigh in favor of the chosen venue because there has been no showing that anything other than "at least some" of the covered products are made in South Carolina and less than 1% of the allegedly infringing products are made in Tennessee.

20

the employees or described their testimony.[6] Baylor Heating, 702 F.Supp. at 1258. "The party asserting witness inconvenience" has the burden to show sufficient details to allow the Court to assess the importance of the inconvenience. Koh, 250 F.Supp.2d at 638. That has not been done.

Next, the Plaintiff complains that the Magistrate Judge relied on cases from Virginia district courts instead of this District. The Magistrate correctly cited cases involving patents for the legal concepts applied to motions to transfer venue. "In patent infringement suits, '[a]s a general rule, the preferred forum is that which is the center of the accused activity.' The center of accused activity will most often be where the offending device is produced." Acterna, L.L.C. v. Adtech, Inc., 129 F.Supp.2d at 939 (citations omitted). In this case, the "offending device" is produced *en masse* in Ohio. The Western District of Pennsylvania is closer to the "center of the accused activity" in Ohio than is the Western District of North Carolina. Moreover, when "a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to ... substantial weight." Hunter Engineering Co. v. ACCU Industries, Inc., 245 F.Supp.2d 761, 775

---

[6]Likewise, the Plaintiff has not identified non-party witnesses, with the possible exception of the seller of the products in North Carolina. The Magistrate Judge noted that the deposition of this person may be taken and used at trial. The Plaintiff did not object to that finding.

(E.D.Va. 2002).  Thus, even if deference to the Plaintiff's initial choice of forum is shown, ultimately the factors weigh against a North Carolina venue.

The Plaintiff next attacks the Magistrate's conclusion that the possibility of a jury view favors transfer.  The Magistrate Judge actually noted that he was "certain" the Plaintiff will seek to view the Defendant's Ohio manufacturing plant. [Doc. 35, at 14].  He also correctly noted how unlikely it would be for a trial court to allow the jury to view two different manufacturing plants.  Noting that the Ohio plant is where most of the allegedly infringing products are made, the Magistrate found that the possibility of view favored transfer.

From this, the Plaintiff extrapolates that transferring the case dictates that no jury view will be allowed.   The Court finds this conclusion erroneous. The possibility of a jury view favors transfer but, as the Magistrate noted, not significantly.  It is more likely that the parties will use videos and exemplars than seek or obtain a trip for the jury from Pennsylvania to Ohio.

Finally, the Plaintiff argues the Magistrate erred by concluding that "the interest in having localized controversies settled at home favors transfer." [Doc. 36, at 13].  This factor, it claims, should be neutral because a patent dispute "is not a localized controversy.  It is a national (if not international)

controversy between two companies that manufacture products that are manufactured in multiple locations and sold to purchasers across the United States." [Doc. 36, at 13].

The Magistrate Judge aptly noted the lack of connection between this District and the controversy at hand.  He also pointed out the confusion the average juror would have when faced with a patent case involving a Swedish plaintiff, a Pennsylvania defendant, plants in Ohio, Tennessee and South Carolina and no connection to North Carolina except a handful of sales.  This conclusion is correct; the mere sale of allegedly infringing products in the original forum does not provide that forum with a substantial interest in having the case decided locally because the sale of those products could occur anywhere in the United States, or even abroad.  In re TS Tech USA Corp., 551 F.3d 1315, 1321 (Fed.Cir. 2008).  Indeed, the Plaintiff makes this same point. See, *e.g.*, TriStrata Technology, Inc. v. Emulgen Laboratories, Inc., 537 F.Supp.2d 635, 643 (D.Del. 2008) ("There is no strong local interest in litigating this action in Illinois because patent issues do not give rise to a local controversy or implicate local interests."); Heil Co. v. Curotto Can Co., 2004 WL 725737 **3 (N.D.Ill. 2004) ("Illinois does not have a strong interest in adjudicating a case between two companies neither of which is located in this

State[.]").

The Court has reviewed the Memorandum and Recommendation and has considered *de novo* specific objections raised thereto. Considering and weighing the factors announced in <u>Jim Crockett Promotions</u>, <u>supra</u>., the Court finds this case should be transferred to the United States District Court for the Western District of Pennsylvania.

### ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion to Transfer Venue [Doc. 24] is hereby **GRANTED** and this action is hereby **TRANSFERRED** to the United States District Court for the Western District of Pennsylvania, Pittsburgh Division.

Signed: May 12, 2010

Martin Reidinger
United States District Judge